(C. D. 894)

THOMPSON MAHOGANY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 15, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges; WALKER, J., dissenting

OLIVER, Presiding Judge: This suit is based upon a protest against the decision of the collector in assessing duty at the rate of 6 per centum ad valorem and $1.20 per thousand feet, board measure, on certain mahogany lumber exported from Cuba and entered at the port of New York, under the provisions of paragraph 404, Tariff Act of 1930, and section 601 (c) (6), Revenue Act of 1932, as modified by the Cuban Trade Agreement (T. D. 47232). Paragraph 404, as modified, provides for:

Mahogany in the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed.

The Government contends that this mahogany lumber has not been further manufactured than "sawed." The merchandise is claimed to be free of duty under the provisions of paragraph 1803 of the Tariff Act of 1930 (plus internal revenue taxes) for:

* * * sawed lumber * * * not further manufactured than planed, and tongued and grooved; all the foregoing not specially provided for * * *.

The plaintiff contends that this mahogany has been "planed."

The facts are not seriously disputed. The imported mahogany lumber measured 3 inches by 3 inches and ranged in length from 3 to 15 feet. Upon arrival at the port of New York, it was unloaded and piled in the railroad yard for inspection and examination. The classifying clerk from the appraiser's office, who personally examined this lumber in the yard at Hoboken, actually touching more than half the total, withdrew a sample from the lot. The sample in evidence (exhibit 1) was cut to its present length (about 3 feet) from a piece measuring about 9 feet in length. He claimed it was representative of the majority of the shipment. He described exhibit 1 as having a "hit-and-miss planing job" on one side (R. 24). The other three sides were sawed. On examination of the shipment he stated he found 5 to 10 per centum of the pieces "thoroughly planed." As to the balance of 90 or 95 per centum, he stated "I would describe it [as] a bad planing job, or a hit-and-miss job" (R. 27).

From the entire testimony there is no question but that the merchandise now before the court has been submitted to a planing process. Whether it is designated as "thoroughly" or "hit-and-miss" planing is immaterial. It was unquestionably a manufacturing operation.

The question we must decide is whether the merchandise now before us is of the kind of "planed" lumber provided for in paragraph 1803. From a careful examination of the testimony we are convinced that the lumber before us has been "planed." It is clear from this entire record and from an inspection of the sample taken from this shipment (exhibit 1) that the quality of the planing job was far from thorough. It most certainly has not been made smooth or even. This mahogany was ordered planed on one side and an extra charge of $5 per 1,000 feet was made for such planing. It has been through the planer (R. 7) which was an operation after the sawing operation (R. 9). The Government's witnesses (the classifying clerk and the examiner) concede that it has been put through a planer which resulted in what they described as a "hit-and-miss" planing job (R. 24). They also stated that to be passed by them as "planed" the lumber would all have to be "thoroughly" planed. They concede that part of this very shipment was "thoroughly" planed and if imported separately would have been classified as "planed." Such testimony clearly

indicates that the advisory classification was predicated upon the degree and quality of the planing and not whether the mahogany was planed.

We do not find any language in paragraph 1803 that limits the planing provided for therein to any particular type or quality. We are of opinion that a perfect job of planing or a poor (hit-and-miss) job, *if it be a planing operation*, fulfills the requirements of the statute. Our appellate court in *United States* v. *Mitsui & Co. et al.*, 17 C. C. P. A. 67, T. D. 43359, had under consideration oak flooring assessed for duty under the provisions of paragraph 403, Tariff Act of 1922, the predecessor of paragraph 404, Tariff Act of 1930, under which the merchandise now before us was assessed for duty. The oak flooring in the *Mitsui* case, *supra*, was claimed to be free of duty as having been planed. The court there held this flooring, because of the planing, to be further manufactured than sawed and therefore not properly dutiable under said paragraph 403, but more specifically provided for under paragraph 1700, Tariff Act of 1922, the predecessor of paragraph 1803 of the present act. The court in the *Mitsui* case referred to the decision of this court in *F. W. Meyers & Co.* v. *United States*, 18 Treas. Dec. 254, T. D. 30084 (G. A. 6938). The merchandise in that case was described as *"rough-planed* on three sides and planed and grooved on the fourth; that all of the processes to which it has been subjected are known as *rough planing* and grooving by machinery * * *."* [Italics ours.] We have no way of determining how the "rough planing" in that case compared with the "hit-and-miss" planing in the case at bar. It is reasonable to assume, however, that "rough planing" is not finished or thorough planing, yet the court in that case (G. A. 6938) found the lumber to have been "planed" within the meaning of paragraph 195, Tariff Act of 1897.

We find the imported merchandise consisting of mahogany lumber to be free of duty as claimed under the provisions of paragraph 1803 of the Tariff Act of 1930, subject, however, to a tax or duty at the rate of $1.50 per thousand feet as provided in section 601 (c) (6), Revenue Act of 1932, as modified by the Canadian Trade Agreement (T. D. 49752), less 20 per centum under the provisions of article III of the Cuban Trade Agreement (T. D. 47232).

The claim in this suit is sustained to the extent indicated. In all other respects and as to all other merchandise all the claims are overruled.

Judgment will be rendered accordingly.

### DISSENTING OPINION

WALKER, Judge: I regret that I am unable to agree with the conclusion reached by my colleagues in this case. In my view, the

merchandise represented by the sample, exhibit 1, was not poorly planed—it was not planed at all, and hence is not entitled to the benefit of classification under the free provision in paragraph 1803.

While the merchandise at bar may have been put through a planing machine, it is clear that the result of the operation, at least as to 90 or 95 per centum of the lumber, fell far short of planing it. "Plane" as a verb is defined in Funk & Wagnalls New Standard Dictionary (1941), as follows:

> To make smooth or even, literally or figuratively; especially, to remove inequalities or roughness from by the use of a plane; dress with a plane; as, to *plane* a board.

It is very manifest, even to the ordinary eye, from an examination of exhibit 1 that the surface which was subjected to the so-called planing operation was not made smooth or even thereby—in fact, it looks more as if a scalloped effect were put on the wood at those places where the knife came into contact with it. It is not a poor planing job; it does not reach the point where it may be said to be a planing job at all. Merely to run a piece of lumber through a planing machine does not necessarily plane it unless proper adjustments have been made to effect the desired result. In the case of the lumber at bar, the result cannot be called "planed," and to all intents and purposes it has not been "further manufactured than sawed."

The weight of the evidence indicates that exhibit 1 is representative of 90 to 95 per centum of the importation, and since there was no claim under the commingled-goods provision, section 508 of the Tariff Act of 1930, the highest rate applicable to the goods must be taken.

In my view, no weight should be given to the evidence offered that the merchandise was ordered planed on one side and an extra charge of $5 per thousand feet was made therefor. This would not be the first instance where a buyer did not get his money's worth. The real evidence, in the form of exhibit 1, shows all too plainly what actually was done—or what actually was *not* done—with the merchandise.

The tariff law contains what appears to be an anomaly when paragraphs 404 and 1803 are considered together, in that the former imposes a duty on mahogany not further manufactured than sawed, while the latter makes free of duty sawed lumber not further manufactured than planed, not specially provided for, which would include mahogany lumber meeting that requirement and thus further advanced than the dutiable product. I am not unmindful of the well-settled rule that an importer may so fashion his merchandise so that it shall be assessed with duty at the lowest rate, or be free of duty, but, as I have stated, to my mind the importer in this case

has not, in fact, brought his merchandise within the category of "planed" lumber provided for in paragraph 1803.