Before the First Division, September 5, 1951

**No. 55846.**—Frederick Mahogany Company v. United States, protest 150704–K (New York).

Mollison, Judge: The merchandise the subject of this protest is described on the invoice as "Cedar Lumber" and was assessed with duty at the rate of 7½ percent ad valorem under paragraph 404 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 404), as modified by the Peruvian Trade Agreement, T. D. 50670, plus $1.50 per thousand feet, board measure, under the provisions of section 3424 (a) of the Internal Revenue Code (26 U. S. C. § 3424 (a)), as modified by the same trade agreement.

The protest is directed against the assessment of duty at the 7½ percent rate under paragraph 404 of the 1930 act, as modified, claiming the lumber involved to be free of duty under paragraph 1803 of the same act. No question is raised as to the assessment under the Internal Revenue Code.

So far as pertinent, the competing provisions of the Tariff Act of 1930 read as follows:

Par. 404. Cedar commercially known as Spanish cedar * * *: In the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed * * *.

Par. 1803. Wood:
 (1) * * * sawed lumber and timber, not further manufactured than planed * * * not specially provided for * * *.

There is no question but that the merchandise involved was Spanish cedar, and that it was in the form of boards. The only question involved is whether or not it was, in its imported condition, planed after having been sawed. In the case of *Thompson Mahogany Co.* v. *United States*, 13 Cust. Ct. 204, C. D. 894, it was held that planing is a manufacturing operation and if performed on sawed lumber the said lumber is "further manufactured than sawed." Under such circumstances, the provisions of paragraph 404 are not applicable, and planed lumber of the kinds named in paragraph 404 takes classification under the free list provision in paragraph 1803.

Decision on the question of fact as to whether or not the merchandise in issue was planed at the time of importation is to be made upon a record consisting of the oral testimony of six witnesses, one for the plaintiff and five for the defendant, and four exhibits, two real and two documentary.

The owner of the plaintiff company, Andrew G. W. Frederick, who testified that he had been in the business of importing mahogany and cedar for 12 years, stated that he had examined the shipment here involved at the time of its importation. His direct testimony as to its condition at that time is as follows:

Q. In your experience, have you dealt in both planed and rough lumber?—A. No, sir, just planed lumber.

Q. I ask you, from your examination of this particular shipment, was it planed?—A. It was not planed the way it usually had been. It was hit and miss.

Q. You described it as hit and miss planed. Is that the term that is used in your business?—A. Yes, sir.

Q. What does it mean?—A. It means the planer hit it perhaps 4 inches, and then missed it 6 inches, and then hit it for 4 more inches.

Q. Was that the condition of this particular shipment?—A. Absolutely. (Tr. pp. 5–6.)

Defendant produced a piece of wood which was marked defendant's exhibit 1 for identification, and was approximately 12 inches long, 6 inches wide, and 1 inch thick. This piece of wood was identified by the plaintiff's witness as the type of Spanish cedar he was importing at or about the time of the involved importation. He stated, however, that it did not represent the condition of the cedar involved. Defendant called to the stand a customs inspector who testified that he took a representative sample of the merchandise covered by the entry here involved, and attached thereto an Elliott-Fisher ticket. He identified such a ticket produced by counsel for the defendant as the one involved and it was received in evidence without objection as defendant's exhibit 3.

Leo Springer, an examiner in the appraiser's office at the port of New York, testified that he received the piece of wood marked defendant's exhibit 1 for identification to which was attached defendant's exhibit 3, and then made a physical examination of the wood.

He stated that at that time the piece of wood was about 2 feet longer, but that for convenience in handling, 2 feet were later sawn from the same. The piece of wood referred to was received in evidence over the objection of counsel for the plaintiff and marked defendant's exhibit 1.

Mr. Springer testified that as part of his official duties he examined certain lumber, although Spanish cedar or cabinet wood lumber was not assigned to him. From his examination of exhibit 1 when it was in its original condition as received, he was of the opinion that it was rough-sawn and not planed, and was not "hit or miss" planed. After his examination, he said, he sent the sample to the United States Customs Laboratory at New York for identification.

Joseph V. Sample, a chemist in the United States Customs Service, testified that he had received the sample in its original form and inspected it. For the purposes of storage, part was cut off and discarded, but he stated that exhibit 1 was representative of the whole piece. He made a microscopic examination of a very thin section of the wood and determined from the presence of resin cells and characteristic fibers that it was Spanish cedar. He also examined it for marks of planing on any surface or edge, but could find no such marks and returned the report that it was not planed. He stated that he had no practical lumber experience but that he had been testing wood in the laboratory for 12 or 15 years.

On cross-examination, he stated that he was familiar with decisions of this court relating to "hit and miss" planing and was familiar with its physical condition so that he could recognize it, and if plane marks are found on lumber, it is reported as planed.

John F. Mitchell, the examiner in the appraiser's office who passed the instant lumber, testified that a letter dated May 8, 1947, had been received from the plaintiff in which exception was taken to the return of the merchandise as not planed. The letter was offered and received in evidence without objection as defendant's exhibit 4, and, among other things, advised the appraiser that the entire shipment had been sold to the Truscott Boat & Dock Co. of St. Joseph, Mich.; that the lumber was then at its plant at Benton Harbor, Mich.; and requested that the customs examiner inspect the shipment at that place. He testified that in response to the request, a letter was prepared by the appraiser's office at New York requesting the appraiser's office in Detroit to make a physical examination of the merchandise at Benton Harbor.

Theodore Hurwitz, United States appraiser of merchandise at Detroit, with 14 years' experience in the examination and appraisement of lumber, testified that

pursuant to a request from the appraiser at New York he went to the plant of the Truscott Boat & Dock Co. at Benton Harbor and traced the shipment of Spanish cedar involved. At that time some had gone into consumption, but he and a laborer turned "a considerable part" of the remainder "looking at it in all respects to find out whether it had been planed." In his observation, it was not planed, and was not further advanced than sawed on any parts, edges, surfaces, or ends. He had a sample of the lumber sawed and sent it to the appraiser at New York, making a report of what he found. He identified a piece of lumber 14 inches long, 11½ inches wide, and 1 inch thick as the sample he extracted, and it was received in evidence without objection as defendant's exhibit 2.

We have set forth the testimonial record at some length since the issue is one of fact. It is obvious that the testimony of defendant's witnesses Springer, Sample, and Hurwitz that the lumber involved was not planed, in rebuttal of the testimony of plaintiff's witness Frederick that it was planed, depends for its force upon the authenticity of defendant's exhibits 1 and 2 as correctly representing the merchandise as imported. We are satisfied that defendant sufficiently established the authenticity of exhibit 1, and plaintiff did not object to the receipt of exhibit 2 in evidence. A physical examination of these exhibits fails to reveal to the lay eye the slightest sign of the results of a planing operation, and we conclude that a preponderance in weight of the evidence favors the contention of the defendant that the lumber in issue had not been planed prior to importation.

Judgment will therefore issue overruling the protest claim accordingly.